UNITED STATES, Appellee,

v.

Thomas R. GRANT, Senior Airman,
U.S. Air Force, Appellant.

No. 97–0920.
Crim.App. No. 32493.

U.S. Court of Appeals for
the Armed Forces.

Argued May 14, 1998.

Decided Sept. 30, 1998.

For Appellant: *Teresa A. Hampton* (argued); *Captain Tishlyn E. Taylor* (on brief).

For Appellee: *Major Allen G. Erickson* (argued); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Michael J. Breslin* (on brief).

---

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of forcible sodomy and indecent assault, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 42 months, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed in an unpublished opinion.

This Court granted review of the following issues:

I

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR IN REFUSING TO ALLOW TESTIMONY REGARDING AIRMAN B'S SEXUAL ORIENTATION.

II

WHETHER THE APPLICATION OF ARTICLES 57(a) AND 58b, UCMJ, VIOLATED THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION WITH RESPECT TO APPELLANT.

We also specified the following issue:
WHETHER THE COURT OF CRIMINAL APPEALS RESOLVED THIS CASE ON THE BASIS OF THE POST–TRIAL SUBMISSION OF COMPETING AFFIDAVITS FILED WITH SUCH COURT, AND, IF SO, WHETHER SUCH POST–TRIAL AFFIDAVITS CONSTITUTE A "RECORD" AS THAT TERM IS USED WITH RESPECT TO THE FACTFINDING POWERS OF THE COURT OF CRIMINAL APPEALS UNDER ARTICLE 66(c), UCMJ, 10 USC § 866(c).

We resolve Issue II in appellant's favor for the reasons stated in *United States v. Gorski*, 47 MJ 370 (1997). We resolve Issue I and the Specified Issue against appellant for the reasons set out below.

*Issue I: Evidence of Sexual Orientation*

*Factual Background*

The charges were based on a complaint by Senior Airman (SrA) B. SrA B alleged that, after a night of heavy drinking, he was sleeping in appellant's bunk and that appellant fondled his genitals and performed oral sodomy on him without his consent. The prosecution relied on the testimony of SrA B and a handwritten statement given by appellant to agents of the Air Force Office of Special Investigations (OSI), in which appellant admitted fondling SrA B's genitals but said nothing about committing sodomy.

The theory of the defense was that SrA B consented to the fondling. The defense asserted that no act of sodomy occurred. Appellant did not testify but relied on his statement to the OSI to present his version of the facts.

SrA B, the victim of the forcible sodomy and indecent assault, testified that he delayed reporting the offenses because he and

appellant were "best friends," and he did not want the incident to "go to court." SrA B testified that he told appellant that he would not report the incident unless he heard that appellant "did this to anybody else." After another airman complained that appellant had caressed him, SrA B reported the incident.

Defense counsel did not attempt to cross-examine SrA B about his sexual orientation but instead attempted to elicit testimony from a witness, Staff Sergeant (SSgt) W, who would have opined that SrA B was homosexual. In response to a government motion in limine, defense counsel argued that SSgt W's testimony was relevant on the issue whether SrA B consented to appellant's advances. The military judge, citing Mil.R.Evid. 412, ruled that SSgt W's testimony was not admissible, reasoning that, "even if an individual is homosexual, that does not mean that· they consented to sexual acts."

Before this Court, appellant argues that SSgt W's testimony was relevant and admissible to support the defense theory of consent. Appellant also argues that the testimony would establish SrA B's motive to lie—to avoid being exposed as a homosexual. Appellant did not assert the latter ground at trial.

The Government argues that the military judge properly excluded the evidence under Mil.R.Evid. 412. The Government argues further that this Court should not consider whether the evidence was admissible to show SrA B's motive to lie, because that ground was not asserted at trial.

### Discussion

■ Mil.R.Evid. 412 provides that evidence of sexual predisposition is not admissible, except in three instances:

(1) Where specific instances of sexual behavior by the alleged victim are offered to prove that someone other than the accused was the source of semen, injury, or other physical evidence;

(2) Where specific instances of sexual behavior by the alleged victim with respect to the person accused of sexual misconduct is offered to prove consent; and

(3) Where the evidence is constitutionally required to be admitted.

The defense did not offer the evidence under the first or second exceptions. We hold that the evidence did not qualify under the third exception because it was not relevant. *See United States v. Sanchez,* 44 MJ 174, 179–80 (1996) (alleged victim's sexual life-style irrelevant to issue of consent, without a showing that the sexual conduct is "so particularly unusual and distinctive as to verify the defendant's version"); *see also United States v. Greaves,* 40 MJ 432 (CMA 1994), quoting *United States v. Duncan,* 855 F.2d 1528, 1533 (11th Cir.1988) (reputation and opinion evidence about victim's past sexual behavior "are not relevant indicators" of consent). Accordingly, we hold that the military judge did not err in excluding SSgt W's testimony about SrA B's sexual orientation.

■ We decline to decide whether the proffered evidence would have been admissible to show SrA B's motive to lie. When military judges exclude evidence, we review their exercise of discretion on the basis of the record before them. Since the defense did not proffer the evidence to show motive to lie, the military judge had no duty to consider it for this purpose. *See United States v. Rust,* 41 MJ 472, 479 n. 3 (1995) (appellant not allowed to relitigate motion on different factual basis for the first time on appeal); *United States v. Vangelisti,* 30 MJ 234, 237 (CMA 1990), quoting *United States v. Roberts,* 7 USCMA 322, 325, 22 CMR 112, 115 (1956) ("Ordinarily, appellate courts review claimed errors only on the basis of the error as presented to the lower courts."). *See also United States v. Clark,* 35 MJ 98, 107 (CMA 1992) (accused may not withhold "trump card" and play it on appeal if he loses at trial).

### Specified Issue: Post–Trial Affidavits

#### Factual Background

Appellant submitted a post-trial affidavit to the court below, asserting that his defense team, composed of a civilian lawyer and a military lawyer, were ineffective. Appellant asserted that his counsel failed to keep him informed about their trial preparations, failed

to explain the consequences of not testifying, and failed to interview potential witnesses who could testify that SrA B was a homosexual. In the affidavit, appellant admits that he told his counsel that he preferred not to testify because of his fear of speaking before others. He asserts that during the trial his counsel did not explain the implications of the military judge's ruling excluding evidence of SrA B's homosexuality and did not inform him that he could change his decision not to testify. He asserts that he was not aware that his counsel would present a defense based on mistake of fact. He asserts that his counsel did not interview witnesses who would establish that SrA B was a homosexual.

Appellant attached to his affidavit a document entitled "My Decision on Whether I Testify." The document, dated August 1, 1996, the first day of trial, recites that military defense counsel—

> has informed me that it is solely my decision whether I take the witness stand and testify under oath at findings and at sentencing. He has explained how my testimony can benefit and/or damage my defense presented in my court-martial. Considering all the factors, I have decided that I (will) (will not) testify under oath at the findings portion of my court-martial, and I (will) (will not) testify under oath at the sentencing portion of my court-martial. (Parentheticals and strike-outs in original.)

Appellant also attached seven pages of single-spaced billing records from his civilian defense counsel. These records reflect extensive research, over seven hours of witness interviews, five conferences with appellant (May 23; June 6; July 29, 30, and 31), and seventeen conferences with military defense counsel (May 24 and 28; June 4, 10, 11, 12, 13, 14, 19, 24, 26; July 2, 17, 26, 29, 30, and 31).

The record of trial reflects that civilian defense counsel conducted extensive *voir dire* of the members, extensively cross-examined prosecution witnesses, made timely and appropriate objections to prosecution evidence, proposed instructions to frame the defense theory of the case, and presented cogent and effective arguments to the members. Appellant was found not guilty of two assaults arising from allegedly inappropriate touchings of another airman.

Although not ordered to do so, appellant's civilian lawyer submitted an affidavit to the court below responding to appellant's assertions. The affidavit contradicts appellant's in three particulars: the extent to which appellant was informed of the benefits and dangers of testifying, the extent to which SrA B's homosexuality was investigated, and the extent to which the billing records reflect the scope of civilian counsel's trial preparation. Civilian defense counsel agrees with appellant that appellant was reluctant to testify because of his fear of speaking before others. Counsel asserts that appellant "was fully advised of the fact that his personal testimony may have greater weight with the jury," as well as of the dangers of cross-examination. Counsel asserts that appellant was advised that he could change his mind during the trial if he decided to testify. Counsel asserts that he and military defense counsel interviewed "each of the witnesses, including [SrA B]," about SrA B's sexuality. Regarding the billing statements, counsel asserts that they do not reflect the extent of his preparation, which consists "of close to 700 pages of materials."

The court below determined that it could resolve appellant's claims without a factfinding hearing, on the basis of the affidavits, "their supporting documentation, and the record of trial." The court below held that appellant's defense counsel were not deficient. Appellant now asserts that the court below erred by not ordering a factfinding hearing to resolve the conflicting facts in the affidavits, citing *United States v. Ginn*, 47 MJ 236 (1997).

### Discussion

■ In *United States v. Scott*, 24 MJ 186, 188 (1987), this Court adopted the test articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as well as the presumption of competence announced in *United*

*States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *United States v. Polk,* 32 MJ 150, 153 (1991), this Court articulated a three-pronged test for determining whether the presumption of competence has been overcome: (1) Whether appellant's allegations are true, and if so, whether there is a reasonable explanation for defense counsel's actions; (2) If the allegations are true, whether defense counsel's level of advocacy fell "measurably below the performance ... [ordinarily expected] of fallible lawyers?"; and (3) If defense counsel was ineffective, whether there is "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt?"

■ In *United States v. Lewis,* 42 MJ 1, 6 (1995), this Court held that a defense counsel should not be compelled to respond to an allegation of ineffectiveness—

> until a court of competent jurisdiction reviews the allegation of ineffectiveness and the government response, examines the record, and determines that the allegation and the record contain evidence which, if unrebutted, would overcome the presumption of competence.

■ In *United States v. Ginn,* 47 MJ 236, 248 (1997), this Court held that a Court of Criminal Appeals may resolve a claim of ineffective assistance of counsel without a factfinding hearing in some cases. Those cases include cases where the facts alleged in an appellant's affidavit "allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor" and where "the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts."

■ Applying the foregoing principles, we hold that a factfinding hearing was not required in this case. Accepting appellant's submissions at face value, he has not overcome the presumption of competence. Appellant's conclusory complaint about his counsel's failure to keep him informed is contradicted by billing records attached to his affidavit. Similarly, his complaint about failure to explain the consequences of not testifying is contradicted by the document attached to his affidavit.

The only point of disagreement between appellant and his defense counsel is whether appellant was advised during the trial that he could change his mind about testifying. Appellant does not say what he would have told the court-martial if he had testified, nor does he say how he would have dealt with his damaging admissions in his statement to the OSI. Assuming without deciding that his counsel did not advise him during the trial that he could change his mind and testify, we hold that any such deficiency falls short of the threshold required by the first prong of *Strickland.*

Finally, even if appellant's counsel did not fully explore the evidence of SrA B's homosexuality, that failure was not deficient performance within the meaning of *Strickland* because the evidence was irrelevant.

*Decision*

The decision of the United States Air Force Court of Criminal Appeals is affirmed as to result only. Collection of any forfeitures and execution of the reduction in grade prior to the date of the convening authority's action are hereby declared to be without legal effect. Any forfeitures already collected from appellant, and any pay and allowances withheld because of the premature reduction in grade, will be restored.

Chief Judge COX, Judge CRAWFORD, and Senior Judge EVERETT concur.

SULLIVAN, Judge (concurring in part and dissenting in part):

I agree with the majority opinion except for its resolution of the *Gorski* question. *See United States v. Gorski,* 47 MJ 370, 376–77 (1997)(Sullivan, J., concurring in part and in the result).